49C01-1807-PL-027477
Marion Circuit Court

Filed: 7/12/2018 2:44 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION COUNTY SUPERIOR COURT |
| | ) SS: | CIVIL DIVISION, ROOM 1 |
| COUNTY OF MARION | ) | CAUSE NO. _____ |

| | |
|---|---|
| E&A HOLDINGS, LLC | ) |
| F/K/A E&A HOLDINGS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LEVITON MANUFACTURING CO., INC. | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiff E&A Holdings, LLC f/k/a E&A Holdings, Inc. ("E&A"), for its Complaint for Damages and Declaratory Relief against Defendant Leviton Manufacturing Co., Inc. ("Leviton"), alleges and states as follows:

### PARTIES AND JURISDICTION

1. This lawsuit arises out of Leviton's December 2, 2016 purchase of E&A's entire membership interest in Conservation Technology of Illinois, LLC ("Contech"), a lighting solutions company.

2. E&A is a privately held company duly organized and existing under the laws of the State of Indiana and maintains its offices at 101 West Ohio Street, Suite 1350, Indianapolis, Indiana 46204.

3. Leviton is a corporation duly organized and existing under the laws of the State of Delaware and maintains its principal place of business in New York at 201 North Service Road, Melville, New York 11747.

4. Jurisdiction and venue are proper in Marion County, Indiana pursuant to Indiana Rule of Trial Procedure 75(A) because E&A's principal office is located in Marion County and many of the events and alleged omissions at issue in this lawsuit occurred in Marion County.

5. E&A and Leviton agreed to permissive, but not exclusive, jurisdiction of the Delaware courts. The parties did not consent to the sole or exclusive jurisdiction of Delaware or any other state.

## FACTUAL BACKGROUND

### The MIP Agreement

6. On or about November 10, 2016, Leviton entered into an agreement with E&A for the purchase of E&A's entire membership interest in Contech (the "MIP Agreement"). A copy of the MIP Agreement is attached as Exhibit A.

7. In furtherance of Leviton's purchase of Contech, which closed on December 2, 2016, Leviton and E&A simultaneously entered into an escrow agreement (the "Escrow Agreement") to be administered by JPMorgan Chase Bank, NA (the "Escrow Agent"). A copy of the Escrow Agreement is attached as Exhibit "B."

8. Section 2.1(b) of the MIP Agreement provided that $1,187,000.00 would be held in escrow by the Escrow Agent for eighteen months following closing. Section 4(a) of the Escrow Agreement provided that, on June 2, 2018, the Escrow Agent would disburse to E&A the amount being held in escrow, plus any accrued but unpaid interest and less the aggregate amount of any outstanding claims asserted against the escrow.

9. Section 3(c) of the Escrow Agreement provided that, if notice and counter notice had been given with respect to any claim against the escrow, the Escrow Agent was entitled to

2

disburse the disputed amount only in accordance with joint instructions of E&A and Leviton or a final order from a court.

10. On February 23, 2018, Leviton filed a claim against the escrow for $433,269.00 and, on March 14, 2018, E&A filed a counter notice disputing the validity of Leviton's claim.

11. As a result of this notice and counter notice under the Escrow Agreement, the Escrow Agent made only a partial disbursement and did not disburse the $433,269.00 to E&A on June 2, 2018.

12. E&A seeks damages from Leviton's breach of the MIP Agreement because the Leviton escrow claim is without merit. E&A also seeks an order from this Court declaring that Leviton's claim against the escrow is invalid and that the Escrow Agent should immediately disburse to E&A the $433,269.00 withheld because of Leviton's claim.

### The Philips Claim

13. Prior to execution of the MIP Agreement, E&A disclosed to Leviton that a pending claim existed from Philips Lighting Holding B.V. ("Philips") which related to Contech's alleged patent infringement and a demand to Contech for licensing and/or royalties relating thereto (the "Philips Claim").

14. E&A disclosed the Philips Claim in Schedules 3.7 and 3.8 of the MIP Agreement, and explained that Philips' initial demand letter, dated February 5, 2015, alleged that some of Contech's LED-based products used Philips' patented technologies. E&A also provided this February 5, 2015 letter to Leviton prior to Leviton's execution of the MIP Agreement, along with other information about the Philips Claim.

15. E&A also disclosed in Schedules 3.7 and 3.8 of the MIP Agreement that Contech had received letters from its LED drive suppliers that supplied LED drivers for use in Contech's

LED lighting fixtures regarding their responsibility and indemnity for the Philips Claim. Again, E&A provided these letters to Leviton prior to execution of the MIP Agreement. Leviton did not seek any additional information about the Philips Claim.

16. Leviton informed E&A that it understood the Philips Claim, as it had been involved in similar but separate negotiations with Philips and was familiar with the Philips patents and Philips' licensing platform and negotiation strategies.

17. E&A's disclosure satisfied Section 3.8 of the MIP Agreement, in which E&A represented that it had disclosed any "claim, complaint, inquiry, . . . [or] dispute . . . pending, or to the Knowledge of Seller, threatened (a) involving, against, related to or affecting (i) the Company, the Subsidiaries, the Business or the Assets . . . ."

18. E&A's disclosure also satisfied Section 3.21 of the MIP Agreement, in which E&A represented there was "no statement contained in the Schedules to this Agreement . . . omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading."

19. Leviton insisted that the purchase price of the MIP Agreement be reduced by $7.5 million to account for potential liability from Philips' allegations of patent infringement and demand for licenses and/or royalties.

20. E&A valued the Philips Claim materially lower than Leviton and, as an alternative to the arbitrary $7.5 million adjustment, proposed making a post-closing adjustment of the purchase price based on the resolution of the Philips Claim.

21. Leviton rejected E&A's offer of a post-closing adjustment and, at Leviton's insistence, E&A accepted the $7.5 million reduction in purchase price of the MIP Agreement to resolve all issues relating to the Philips Claim.

4

22. On December 12, 2016 after the sale transaction closed, E&A provided Leviton's General Counsel and Chief Intellectual Property Counsel, Meir Blonder, an overview of E&A's positions as to the merits of the Philips Claim, the indemnification letters from Contech's suppliers, and the recent IPR decisions, including the status of the ongoing discussions between Philips and E&A. After this December 12, 2016, discussion, Leviton did not further contact E&A about the Philips Claim until it made the claim against the escrow.

### Leviton's Breaches Of The MIP Agreement

*Leviton's Failure to Provide E&A Prompt Notice*

23. On February 23, 2018, Leviton filed a claim with the Escrow Agent, pursuant to Section 3(b) of the Escrow Agreement, alleging that Contech incurred a loss after execution of the MIP Agreement due to the Philips Claim and seeking indemnification from E&A in the amount of $433,269.

24. On that same day, February 23, 2018, more than a year after the closing, Leviton for the first time informed E&A that it had continued in negotiations with Philips and, in fact, had reached an agreement with Philips to pay royalties on certain sales for the time period that preceded the MIP Agreement.

25. On March 14, 2018, pursuant to Section 3(b) of the Escrow Agreement, E&A provided written counter notice to the Escrow Agent and Leviton objecting to Leviton's indemnification claim and providing the basis of its objections.

26. Leviton failed to comply with Section 7.3 ("Notice of Claims and Third-Party Actions") of the MIP Agreement, which required Leviton to provide E&A prompt written notice of any indemnification claim it intended to make against E&A. Specifically, Section 7.3(c) required Leviton to provide "prompt written notice of the commencement of any claim for

5

indemnification under this Article VII [Indemnification by Seller (E&A)] that involves a claim by a third-party."

27. Leviton did not provide prompt written notice of its indemnification claim. In fact, Leviton provided no notice to E&A that it was asserting an indemnification claim with respect to Philips' claims.

28. The MIP Agreement required Leviton to provide prompt notice to E&A of an indemnification claim so that E&A could, among other things, have the opportunity to defend and challenge any such underlying claim, participate in negotiations, or involve any parties subject to indemnity and contribution. Specifically, Section 7.3(d) of the MIP Agreement provided that E&A "shall have the right . . . to contest, handle and defend such Third-Party Action on behalf of [Leviton]."

29. Leviton's failure to provide timely notice materially prejudiced E&A's opportunity to investigate and defend against Philips' claims. Among other things, Leviton's failure to give prompt notice completely deprived E&A of any opportunity to defend against or challenge Philips' claims. Leviton's lack of notice also deprived E&A from participating in the negotiations between Philips and Leviton and the decision Leviton made to enter into a license agreement with Philips and on what terms.

30. Section 7.3(c) of the MIP Agreement provided that Leviton's failure to provide prompt notice of an indemnification claim to E&A would forfeit Leviton's right to indemnification if it "materially and adversely affected [E&A's] ability to defend such Third-Party Action." Leviton's failure to provide E&A prompt notice of its indemnification claim undoubtedly had a material and adverse impact on E&A's ability to defend against Philips' claim.

6

31. As a result, any indemnification claim from Leviton to E&A relating thereto is invalid and barred by the MIP Agreement.

### *Leviton's Failure to Provide E&A Requested Documentation*

32. Section 7.3(b) of the MIP Agreement provided that Leviton must provide "all information and documentation reasonably necessary to support and verify any Losses which [it] believes give rise to a claim for indemnification hereunder and shall give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have bearing on such claim."

33. E&A has repeatedly requested documents necessary for it to evaluate Leviton's indemnification claim. Leviton has not produced any documents or information, nor has it provided E&A an opportunity to review or access supporting or back-up documentation relating to its indemnification claim. Leviton's failure to do so also renders Leviton's indemnification claim invalid.

34. Rather than provide documentation required by the MIP Agreement, Leviton requested E&A enter into a confidentiality agreement with Philips and Leviton. The confidentiality agreement that Leviton and Philips proposed was prejudicial to E&A in that it unreasonably limited the purpose for which documents obtained thereunder could be used. Among other things, the agreement would have prevented E&A from using documentation obtained thereunder in any claim or litigation to enforce the terms of the MIP Agreement, including litigation required by the Escrow Agreement to obtain the disputed escrow funds.

35. Leviton had an obligation under the MIP Agreement to make available to E&A the documents that support its indemnification claim to E&A and its failure to do so is a breach of the MIP Agreement and renders its claim invalid and barred by the MIP Agreement.

### *Leviton's Failure to Mitigate Its Alleged Damages*

36. Leviton's failure to provide notice to E&A also deprived E&A of its rights to contribution or indemnity from Contech's LED drive suppliers and/or to involve the suppliers in negotiations and meaningfully pursue its own indemnification to mitigate any alleged damages.

37. Letters to Contech from the LED suppliers regarding possible indemnification were provided to Leviton prior to execution of the MIP Agreement. Leviton acknowledged receipt of these letters. These letters should have provided substantial, if not complete, relief from Philips' claims by addressing most, if not all, of the liability sought by Philips.

38. Section 7.2(f) ("Duty to Mitigate") of the MIP Agreement provided that Leviton "shall use commercially reasonable efforts to mitigate any Losses for which such indemnified party seeks indemnification."

39. Leviton did not seek relief from the LED suppliers or otherwise attempt to mitigate its alleged damages and, therefore, Leviton breached the MIP Agreement and Leviton's indemnification claim is invalid and barred by the MIP Agreement.

40. Leviton failed to materially perform its obligations under the MIP Agreement and is in default and breach of the MIP Agreement by, among other things, failing to provide Leviton prompt written notice of its indemnification claim to allow E&A the opportunity to investigate and defend against Philips' claims, failing to provide requested documentation supporting its indemnification claim, and failing to mitigate any alleged damages by seeking indemnification from its LED drive suppliers.

41. Leviton breached its obligations to E&A under the MIP Agreement, and E&A has incurred significant damages because of Leviton's breaches. As a result of Leviton's material

breaches of the MIP Agreement and default thereunder, E&A is entitled to an award of its damages caused by Leviton, including the $433,269.00 in escrow.

42. Moreover, because Leviton first breached the MIP Agreement, any indemnification claim thereunder against E&A is invalid.

### Leviton's Lack Of Any Damages

43. Leviton was fully aware of the Philips Claim prior to executing the MIP Agreement. Leviton declined E&A's offer to obtain additional information by disclosing the potential transaction to Philips prior to executing the MIP Agreement. Instead, Leviton insisted on its own self-proclaimed familiarity with similar claims by Philips.

44. Leviton obtained a $7.5 million reduction in the purchase price of the MIP Agreement to reflect the potential liability from Philips' allegations of patent infringement and demand for licenses and/or royalties. Any further monies awarded to Leviton would constitute unjust enrichment.

45. Leviton has suffered no loss due to Philips' claims because it already had been compensated for any loss associated therewith given the $7.5 million reduction in the purchase price of the MIP Agreement.

46. The fee that Leviton claims it paid to Philips was covered by the adjustment in the purchase price of the MIP Agreement.

47. E&A disclosed the Philips Claim and did not violate the MIP Agreement. Leviton, for this reason as well, has no basis for indemnification from E&A and no valid claim against the escrow based on Philips' claims.

48. The Court, therefore, should find Leviton's claims against the escrow invalid and order the Escrow Agent to immediately release to E&A the $433,269.00 being held in escrow.

## COUNT I
## Breach of Contract

49. E&A incorporates by reference the foregoing allegations of paragraphs 1-50.

50. Leviton failed to materially perform and breached its obligations under the MIP Agreement.

51. Leviton breached the MIP Agreement by failing, among other things, (1) to provide E&A timely notice of its indemnification claim, which materially and adversely affected E&A's ability to investigate and defend against Philips' claims; (2) to provide E&A requested information and documentation to allow E&A to investigate Leviton's indemnification claim against E&A; and (3) to mitigate its alleged damages by pursuing the LED drive suppliers for indemnification.

52. Leviton's breaches of the MIP Agreement materially and adversely affected E&A's ability to defend against the Philips' claims and pursue contribution and indemnification.

53. Leviton first breached the MIP Agreement and, therefore, cannot enforce the MIP Agreement.

54. Moreover, Leviton's claim against the escrow is invalid and barred by the MIP Agreement.

55. E&A has been and will continue to be damaged by Leviton's breach of the MIP Agreement.

56. All conditions precedent to E&A's claims under the MIP Agreement have been performed or waived.

WHEREFORE, E&A respectfully requests the Court find Leviton's claim against the escrow invalid, award damages to E&A in amount sufficient to compensate it for its losses, order

the Escrow Agent to immediately release to E&A the $433,269.00 currently in escrow, award prejudgment and post-judgment interest, award costs, and grant all other just and proper relief.

## COUNT II
### Declaratory Judgment

57. E&A incorporates by reference the foregoing allegations of paragraphs 1-58.

58. As of June 2, 2018, pursuant to the MIP Agreement and Escrow Agreement, E&A was entitled to the $433,269 currently being held in escrow by the Escrow Agent.

59. An actual controversy of a justifiable nature currently exists among the parties as to the $433,269 currently being held in escrow by the Escrow Agent.

60. Pursuant to Ind. Code § 34-14-1-1 et seq. and Rule 57 of the Indiana Rules of Trial Procedure, E&A is entitled to and requests this Court enter a judgment declaring that (1) Leviton's claim against the escrow is invalid and the Escrow Agent has a legal obligation to immediately release to E&A the $433,269 currently being held in escrow, and (2) Leviton has breached (and continues to breach) its obligations under the MIP Agreement.

61. The issuance of a declaratory judgment by this Court will terminate existing uncertainty and controversy between the parties to the funds being held by the Escrow Agent, and the parties' rights, status and legal relations thereunder.

WHEREFORE, E&A respectfully requests that the Court enter judgment (a) declaring that (1) Leviton's claim against the escrow is invalid and the Escrow Agent has a legal obligation to immediately release to E&A the $433,269.00 currently being held in escrow, and (2) Leviton has breached (and continues to breach) its obligations under the MIP Agreement; (b) directing the Escrow Agent to immediately release to E&A the $433,269.00 currently being held in

escrow, (c) awarding E&A its costs in maintaining this action along with pre and post judgment interest, and (d) awarding all other just and appropriate relief.

/s/ Andrew J. Detherage
Andrew J. Detherage (Atty. No. 15149-49)
Andrea S. Warren (Atty. No. 29541-53)
Barnes & Thornburg LLP
11 S. Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
andrew.detherage@btlaw.com
andrea.warren@btlaw.com

*Counsel for Plaintiff E&A Holdings, LLC f/k/a E&A Holdings, Inc.*